JACKSON, Plaintiff in error, v. STATE, Defendant in error.

Court of Appeals

*No. 79-137-CR. Argued June 21, 1979.—*
*Decided August 21, 1979.*
(Also reported in 284 N.W.2d 685.)

1

2

For the plaintiff in error, there were briefs by *Richard L. Cates,* state public defender and *Richard M. Sals,* assistant state public defender, with oral argument by *Richard M. Sals.*

For the defendant in error, there was a brief by *Bronson C. La Follette,* attorney general and *Thomas J. Balistreri,* assistant attorney general, with oral argument by *Thomas J. Balistreri.*

Before Voss, P.J., Brown and Bode, J.J.

BROWN, J.   This is an appeal from a judgment of conviction finding the defendant guilty of felony-theft contrary to sec. 943.20 (1) (a), Stats.  The defendant is

claiming he was deprived of his right to a unanimous jury verdict when the trial court instructed the jury on all five alternative elements of the offense of theft—taking and carrying away, using, concealing, transferring and retaining. The defendant claims the same error was made when the court instructed the jury on the defendant's culpability as a party to a crime. The facts as presented by the State at trial are as follows.

The first transactional witness, Leonard Wilson, testified that on February 24, 1977, he, the defendant, Charles Jackson, Stacy Schmelter and Jamel Quarles, drove to the University of Wisconsin—Oshkosh music room in the defendant's car to return an instrument the defendant was using. The defendant entered the building with Leonard Wilson and Jamel Quarles. Stacy Schmelter remained in the car. Wilson testified that while the defendant was returning the instrument, he went into the storage room, removed some of the instruments and took them outside. He then saw the defendant's car starting to leave. He went over to the car and asked if he could have a ride home. He was told he could not and, he noticed that the back seat was full of instrument cases. Wilson picked up his instruments and walked to his apartment which he shared with Jamel Quarles and Cindy Chappa. Inside the apartment, he saw the instrument cases in the living room.

Bonnie Annis testified that on April 13 she was at the University of Wisconsin—Oshkosh when the defendant and another man, James Cobb, picked her up and drove to Becker's Music Store. She testified that the defendant asked her to take an instrument to the store manager and try to sell it for no less than $50. She went into the store, but the manager would only pay her $35 for the instrument. She went outside, asked the defendant what to do, and "they" (Cobb and the defendant) told her to take the $35. When she went back into the store, she was informed

that the police had been called because the instrument might be stolen. The police arrived, questioned her and arrested her. The charges were ultimately dropped against her.

James Cobb testified that he had met the defendant on April 12, and the defendant asked him to pick him up the next day and drive to Milwaukee to sell some instruments. He met the defendant the next day at approximately 1:00 p.m. They picked up Bonnie Annis at the university and drove to Becker's Music Store, where Bonnie was to sell an instrument. He stated that after Bonnie had gone into the store, she came out and asked the defendant what to do because they would only give her $35 for the instrument. Cobb stated the defendant told her to take the $35. The defendant then asked him to go into the store and make sure everything was all right. He went into the store and saw the owner calling the police so they left the area. Cobb stated he knew the defendant played an instrument in the band and did not know the instrument was stolen.

After the police arrived at the music store and questioned Bonnie Annis, they went to the defendant's apartment. Cynthia Chappa let them in. She told the officers she had seen musical instrument cases in the living room but did not see who brought them in or took them out. However, she did testify she saw the defendant take several instruments out of the apartment. She then gave the police permission to search. They searched the storage area under the building and found some of the instruments in the crawl space.

The instruments were sent to the crime laboratory and tested for fingerprints. The defendant's fingerprints were on at least one of the instruments.

John Minniear, Chairman of the Music Department at the University of Wisconsin—Oshkosh, testified that the

replacement value of the fourteen instruments stolen was approximately $19,000.

The defendant was charged with burglary and felony-theft, as an aider and abettor. After the preliminary, the burglary charge was dismissed. He was bound over for trial on the theft charge. The information charged the defendant with aiding and abetting the taking and carrying away of fourteen musical instruments valued at approximately $11,100. Count II of the information charged the defendant with receiving and concealing the instruments, as an aider and abettor.

On September 12, a jury trial commenced. At the beginning of the trial and during the jury instructions, the court instructed the jury that the defendant was charged in Count I with aiding and abetting the taking and carrying away of movable property without the owner's consent and with the intent to deprive the owner permanently of possession of the property.

However, when the court instructed the jury, they were told that they may find the defendant guilty of the crime charged if they find that he directly committed the offense or aided and abetted another in the commission of the offense. In defining the elements of the offense of theft, the court instructed the jury that they may find the defendant guilty if they find he either intentionally took and carried away or used or transferred or concealed or retained possession of movable property of another without lawful authority.

The defendant claims these instructions are reversible error. The defendant's challenge to the instructions given to the jury is that by instructing the jury in the disjunctive, he was deprived of his right to a unanimous jury verdict contrary to art. I, §5 of the Wisconsin Constitution.

In order to analyze the defendant's objection to the jury instructions, the objection must be separated into

two objections: (1) a challenge to the instructions relating to the complicity as a party to a crime, and (2) a challenge to the instructions relating to the elements of theft.

## PARTY TO A CRIME INSTRUCTION

Although the defendant was charged with theft and receiving stolen property as an aider and abettor, the court instructed the jury, throughout the jury instructions, that they could find the defendant guilty of either offense if they found he either directly committed them or aided and abetted someone else in the commission of the offense. The court instructed the jury that they must return a unanimous jury verdict. However, the court did not instruct the jury that, before they could find the defendant guilty, they must either unanimously agree he directly committed one of the offenses or they must unanimously agree he aided and abetted someone else in the commission of one of the offenses. The defendant claims that this failure deprived him of his right to be proven guilty of the crime charged beyond a reasonable doubt and to a unanimous jury verdict. He asserts it permitted the jury to return a verdict of guilty even though some jurors believed he aided and abetted, and some believed he directly committed the offense.

This issue was recently decided by the Wisconsin Supreme Court in *Holland v. State,* 91 Wis.2d 134, 280 N.W. 2d 288 (1979). In *Holland,* the court held that while the State must prove every element of the offense charged beyond a reasonable doubt, the jury need not unanimously agree on the alternative ways in which a defendant can be held criminally liable for the offense. Being a party to the crime is not an element of the offense charged. It is only the means by which the defendant is held criminally liable for the offense. Thus, once the State

has proven the elements of the offense, all the jury need agree on is that the defendant was somehow or in some way a party to the crime charged and proven. As the court said in *Holland:*

Here we have a single offense for which the defendant could be found liable in three alternative ways—direct commission, aiding and abetting, and conspiracy—when the jury unanimously concluded the defendant was guilty of second-degree murder. The jury unanimously found participation, and it was not necessary that it be agreed as to the theory of participation. To require unanimity as to the manner of participation would be to frustrate the justice system, promote endless jury deliberation, encourage hung juries, and precipitate retrials in an effort to find agreement on a nonessential issue. *Holland, supra,* at 144, 280 N.W.2d at 293.

Similarly, in this case, the defendant was charged with the single offense of taking and carrying away the movable property of another without the owner's consent and with intent to deprive the owner permanently of the property. The manner in which he participated in this offense—either by directly taking and carrying the property away or by aiding and abetting the taking and carrying away—was not an element of the offense. The jury did not have to unanimously agree on the manner in which he participated. They unanimously agreed that he participated in some way which is all that was required. Therefore, the trial court did not err in failing to instruct the jury that they must be unanimous on the manner in which the defendant was liable as a party to the crime.

## THEFT

The argument raised by the defendant relating to the instructions on the elements of the offense of theft is

similar to the argument he raised with the party to a crime instruction. He claims that since the court instructed the jury on all five alternative elements of the crime of theft—taking and carrying away, using, concealing, transferring and retaining—he was deprived of his right to be proven guilty beyond a reasonable doubt and to a unanimous jury verdict. We agree.

The leading case on the requirement of unanimity is *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977). In *Gipson,* the defendant was convicted of receiving, concealing, storing, bartering, selling or disposing of a stolen vehicle in interstate commerce contrary to 18 U.S.C. §2313. At trial, the jury was instructed that they did not have to agree on which of the six acts the defendant had committed as long as they agreed that he had done one of them. The jury found the defendant guilty, and the fifth circuit reversed. The fifth circuit reasoned that, before the jury could find the defendant guilty, they had to unanimously agree on the *actus reus* element of the offense. Where there are alternative *actus reus* elements, and the elements are conceptually distinct, the jury must be unanimous as to which of these alternative elements the State has proven beyond a reasonable doubt. The basic rationale of *Gipson* has been adopted in Wisconsin. *Wray v. State,* 87 Wis.2d 367, 372–74, 275 N.W. 2d 731, 734 (Ct. App. 1978).

Accepting the *Gipson* rationale, the question becomes when and under what circumstances does it apply. In determining whether the unanimity requirement of *Gipson* applied to the party to a crime statute, the Wisconsin Supreme Court in *Holland v. State, supra,* held that unanimity as to the alternative ways in which one may participate in a crime was not required. The court essentially concluded that the alternative acts which make a defendant a party to a crime were not alternative ele-

ments of the crime charged. The court noted that a defendant may be convicted as a party to a crime even though the information does not charge the defendant as a party under sec. 939.05, Stats. *Holland v. State, supra,* at 142, 280 N.W.2d at 292; *Harrison v. State,* 78 Wis.2d 189, 209–10, 254 N.W.2d 220, 228–29 (1977); *Bethards v. State,* 45 Wis.2d 606, 617–18, 173 N.W.2d 634–640–41 (1970). If a defendant is charged as a party to a crime, the specific subsection of sec. 939.05, Stats., (manner of participation) need not be specified. *Holland v. State, supra; State v. Cydzik,* 60 Wis.2d 683, 688, 211 N.W.2d 421, 425 (1973). Likewise, the State need not elect its theory of participation before the case is submitted to the jury. *Holland v. State, supra; Harrison v. State, supra; Hardison v. State,* 61 Wis.2d 262, 270–72, 212 N.W.2d 103, 107–08 (1973). It also follows from these cases that a complaint or information charging the defendant in the disjunctive as a principal or aider and abettor or a conspirator, is not duplicitous and, therefore, not defective. None of these requirements apply, including unanimity, where the alternative acts are not alternative elements of the offense charged. As the court noted in *Holland,* the manner of participation is a "nonessential issue." *Holland v. State, supra,* at 144, 280 N.W. 2d at 293.

That is not the case, however, with the theft statute. Section 943.20(1)(a), Stats., is similar to the statute involved in *Gipson.* It contains five distinct alternative elements of the offense. Without proof of one of these alternative elements, there is no crime of theft. The State must plead one of these alternative elements of the offense in the complaint or information. Without one of these alternative elements in the complaint or information, no crime is charged; therefore, the complaint or information is jurisdictionally defective and void.

*Champlain v. State,* 53 Wis.2d 751, 754, 193 N.W.2d 868, 871 (1972). The State may not, however, charge the defendant in the disjunctive by alleging that he took and carried away *or* used *or* transferred, etc. Where the complaint charges in the disjunctive and the terms are not synonymous, the complaint is defective. The charging document is duplicitous and fails to charge an offense with the requisite certainty or specificity. *State v. Kitzerow,* 221 Wis. 436, 438–39, 267 N.W. 71, 72 (1936); *Bonneville v. State,* 53 Wis. 680, 687, 11 N.W. 427, 430 (1882); *Clifford v. State,* 29 Wis. 327, 329–30 (1871).

One of the reasons a duplicitous charge is defective is that it permits the jury to find the defendant guilty without unanimously agreeing on the specific offense. It also permits the jury to find the defendant guilty without the State proving the elements beyond a reasonable doubt. *See United States v. Gipson,* 553 F.2d at 457–59; *United States v. UCO Oil Co.,* 456 F.2d 833, 835 (9th Cir. 1976). Thus, it follows that where there are alternative elements of the offense, and the defendant is charged with these alternative elements, the trial court must do one of the following to avoid these problems. The court may only submit one of these alternative elements to the jury in the instruction based on the State election of which one they wish to submit to the jury. Alternatively, if more than one is submitted to the jury, the court must instruct the jury that before they may find the defendant guilty, they must unanimously agree on the alternative element they find was proven beyond a reasonable doubt. Since alternative elements were submitted to the jury in this case, and the jury was not instructed that they must unanimously agree on the element the defendant committed, the instructions were erroneous and violated the defendant's right to a unanimous jury verdict.

The error committed in this case, however, is subject to the harmless error rule set out in *Chapman v. California,* 386 U.S. 18 (1967). If the error was harmless beyond a reasonable doubt, the conviction must be affirmed. Based on the evidence adduced at trial and the verdict returned by the jury, we think the error was harmless beyond a reasonable doubt.

The verdict returned by the jury specified the value of the property taken and carried away or used or transferred or concealed or retained at $17,000. The only evidence adduced at trial relating to $17,000 worth of property was the evidence relating to the defendant's aiding and abetting the taking and carrying away of the property. All of the evidence adduced on the other alternative elements related to some—but not all—of the instruments. Thus, the value of the instruments transferred or attempted to be transferred, used, concealed or retained would have been less than $17,000. It is clear from the jury verdict that the jury unanimously found the defendant guilty of aiding and abetting or directly taking and carrying away all of the instruments. The instructions including transfer, use, concealment and retention were therefore harmless error.

*By the Court.*—Judgment and order affirmed.